# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-CR-00312 (RC)** |
| **v.** | : | **Case No. 23-CR-00313 (RC)** |
| | : | |
| **RALPH KAHLER and SUZANNE** | : | |
| **KAHLER,** | : | |
| | : | |
| **Defendants** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendants Ralph Kahler and Suzanne Kahler to thirty-six months of probation with a condition of intermittent confinement totaling 14 days for each defendant. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution for each defendant.

## I.      Introduction

Defendants Ralph Kahler, a 64 year-old retired Vice President of a company and his wife Suzanne Kahler, a 62 year-old retiree, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

The Kahlers pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by the defendants' (1) entry into the U.S. Capitol despite the chaos, destruction, and violence occurring there; and (2) lack of remorse for their actions.

The Court must also consider that the defendants' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of the Kahlers' crimes support a sentence of thirty-six months of probation with a condition of intermittent confinement totaling 14 days, 60 hours of community service, and $500 in restitution for each defendant in this case.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 18.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendants Ralph and Suzanne Kohler's Role in the January 6, 2021 Attack on the Capitol*

The Kahlers are a married couple from Great Falls, Virginia, who traveled together to Washington D.C and participated in the riot at the U. S. Capitol building on January 6, 2021, as captured by surveillance videos and public source images.  *See* Image 1.



*Image 1[2] (Ralph Kahler circled in green; Suzanne Kahler circled in red)*

On January 6, 2021, the couple moved throughout the Capitol grounds.  The Kahlers were identified walking up the steps from the Lower West Terrance towards the Upper West Terrace at approximately 2:34 PM. As they ascended the stairs, under the scaffolding, some rioters were climbing the scaffolding. At the top of the stairs, bike racks had been thrown to the ground, wrapped in yellow police tape.  *See* Image 2.

---

[2]Screenshot from https://facebook.com/beccalynvandriver./videos/101591346310136816



*Image 2 The Kahlers on the stairs leading to the Upper West Terrace*

Closed Circuit Television (CCTV) footage captured the Kahlers entering and remaining in the U.S. Capitol building.  The Kahlers entered the Senate Wing Door at 3:07.  *See* Image 3.  At that time, the Senate Wing Door had shattered glass in its window and an audible alarm was sounding.  There was also glass on the floor from the two shattered windows on either side of the Door, and a broken podium lay on the ground, in the lobby.



*Image 3 – Ralph and Suzanne Kahler entering through the Senate Wing Door*

4

Once inside of the building, the Kahlers took photos and filmed their time inside. The pair then attempted to walk south toward the Crypt. Just before beginning down the hallway, Suzanne Kahler turned back to pose for a photo. *See* Image 4.



*Image 4- Suzanne Kahler circled in red posing in the Capitol; Ralph Kahler circled in green*

The two then continued down the hallway. After not making it very far, the Kahlers turned around and walked back out of the Senate Wing Door. CCTV camera captured the Kahlers exiting together at 3:09 p.m. See Image 5.



*Image 5- The Kahlers exiting through the Senate Wing Door*

In total, the Kahlers remained inside of the U.S. Capitol for approximately 3 minutes.

Additional open-source footage revealed the pair standing outside on the Senate side of the Upper West Terrace, just moments after exiting the U.S. Capitol building. After encountering officers dressed in riot gear inside the Capitol, walking past broken podiums, shattered glass, and hearing audible alarms, the Kahlers remained in this area for approximately 29 minutes, before walking north, towards the North Door of the U.S. Capitol building.

*Post-arrest Interview with the FBI*

On July 6, 2023, Ralph Kahler gave a voluntary post-arrest interview to the FBI. During the interview, he admitted that they took the metro to Washington D.C. to listen to the speeches that day. Ralph Kahler claimed that he and Suzanne Kahler walked to the Capitol to listen to other speeches. He claimed they never saw violence or destruction. He eventually admitted that he saw smoke bombs and other chaos but claimed that he was not near either. He admitted that he and Suzanne Kahler walked in and stayed in for a minute or two until they decided to leave. He repeatedly suggested during the interview that the police did not discourage them from being inside and did not tell them to stay out. He claimed that he did not see people destroy things and also described the other rioters as nice people and claimed that he did not see any aggression. He remorselessly claimed that no one was trying to overthrow anything, including himself. As he put it, "I don't deserve [this]."

Susanne Kahler also spoke to law enforcement after her arrest. She admitted that entered the U.S Capitol with her husband, Ralph Kahler. They went to Washington D.C. to listen to speeches. They walked to the Capitol after that. She claimed it was not clear they could not go inside because the door was open and no one told them they could not go in. She noted other people were going inside. She claimed it was quiet and claimed there was "nothing distributing

going on" around her although she noted people hooting and hollering on the lawn. She did hear about tear gas being used.  Still, they decided to enter the Capitol building because they were curious.  They left because they could not tell what was going on further inside. She recalled taking photos that day but later deleted them as she was "concerned about being caught up."

*The Charges and Plea Agreement*

On July 3, 2023, the United States charged the Kahlers by a complaint for violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On September 26, 2023, pursuant to a plea agreement, the Kahlers pleaded guilty to Count One of an Information, charging each with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, the Defendants agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

The Kahlers now face sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of thirty-six months of probation with a condition of intermittent confinement totaling 14 days, 60 hours of community service, and $500 in restitution in this case.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds

of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing the Kahlers' participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like the Kahlers, the absence of violent or destructive acts is not a mitigating factor. Had the Kahlers engaged in such conduct, they would have faced additional criminal charges.

One of the most important factors in the Kahlers' case is their entry into the U.S. Capitol grounds and building despite the obvious chaos, destruction, and violence occurring. The Kahlers' presence on the restricted grounds and in the Capitol building contributed to the number of rioters that overwhelmed police. Although the Presentence Investigation Reports for the Kahlers summarily indicate the Kahlers have taken responsibility for their actions, Ralph Kahler frankly expressed a lack of remorse for taking part in the riot by telling an FBI agent, "I don't deserve this".

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of one year of probation with a condition of intermittent confinement totaling 14 days in this matter.

### B.  The Kahlers' History and Characteristics

As set forth in the PSR, the Kahlers have no criminal history, are retired, and own a home. They have no history of drug or alcohol abuse.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration,

as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.") (statement of Judge Berman Jackson at sentencing).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The Kahlers must also recognize that their actions not only were illegal, but contributed to

the chaos, destruction, and violence that occurred on January 6, 2021.  Ralph Kahler's post- arrest statements are troubling.  In the interview, he portrayed the events of January 6, 2021 as a peaceful protest by good people and blamed police for not stopping them from entering, in spite of the destroyed barriers, broken windows, and alarms blaring. He went as far as to say that both he and his wife did not deserve to be arrested.

The Court should view any remorse the Kahlers express at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when they realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan). Given this lack of remorse and failure to appreciate the events of January 6 as reflected in their post-arrest statements and their contribution to the riot, the recommended sentence is not only necessary to impart an understanding of the wrongfulness of their conduct, but also to ensure that the Kahlers do not participate in future criminal behavior.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Court must sentence the Kahlers based on their own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

The Kahlers pleaded guilty to Count One of the Information charging them with of with parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).  This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Lattanzi*, 22-cr-28 (TSC), Judge Chutkan imposed a sentence of 14 days' incarceration[4] where the defendant entered the Capitol at 3:22 p.m., remained in the Capitol for 5 minutes, and left when an officer told him to. The defendant lied to the FBI when first approached, but then made truthful statements through his lawyer the next day.  Ralph Kahler minimized the conduct of other rioters, and his own conduct to the FBI.  He, at the very least,

---

[4] This sentenced was imposed before *United States v. Little*, 78 F.4th 453, 461 n.7 (D.C. Cir. 2023).  The same result can be applied as noted below consistent with *Little* as part of a condition of probation.

mislead the agents in his interview when he said that he did not observe any destruction, as he walked into the Capitol through a door with a broken window and walked by a destroyed podium. The Kahlers similarly entered the Capitol soon after the initial breach and chose to remain on the Capitol grounds for almost half an hour despite the surrounding chaos.

In *United States v. Tammy Bronsberg,* 21-cr-144 (RBW), Judge Walton sentenced the defendant to 20-daysof incarceration[5] for entering the Capitol after seeing tear gas and rioters breaking into the doors.  Similarly, the Kahlers witnessed rioters scaling the walls on Capitol grounds and saw the destruction that had been done to and in the Capitol building. Bronsberg entered the Senate Fire Door near the Parliamentarian's office at about 2:46 p.m., four minutes after that location was first breached (which the defendant BAH observed). Although Bronsberg exited the Capitol 30 seconds later, unlike the Kahlers she then entered the Capitol a second time through the Senate Wing Door and remained inside for 10 minutes. During this time, Bronsberg entered Senate Conference Room S145 and drank alcohol while watching riot police attempt to remove others from building. Post-arrest, the defendant posted to Facebook that she would "do it again." Ralph Kahler showed a similar lack of remorse in his statement to the FBI.  Bronsberg also had a 30-year-old DUI conviction, a conviction in 2017 for possession of drug paraphernalia, and a disorderly conduct conviction in 2017. While the Kahlers did not have any criminal history, they similarly entered the Capitol for a short time after initial breach.  While they left the building after three minutes, they chose to remain on restricted Capitol grounds despite the surrounding chaos.

In *United States v. Paul Modrell,* 21-cr-144 (BAH), Judge Howell sentenced to 90 days of home detention a defendant who entered through a smashed-out broken window shortly after the

---

[5] This sentence was also imposed before *United States v. Little*, 78 F.4th 453, 461 n.7 (D.C. Cir. 2023).  The same result can be applied as noted below consistent with *Little* as part of a condition of probation.

initial breach of the Capitol building, minimized the violence he encountered on January 6 when interviewed by FBI agents, and failed to express remorse for his unlawful conduct on January 6. While, unlike the Kahlers, this defendant also remained inside the Capitol for an extended period of time, traveled through multiple areas inside the Capitol, and was in close proximity to violence against police in the Capitol, the sentence is telling in light of the minimization and lack of remorse expressed.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Intermittent Confinement as a Condition of Probation

As a condition of probation, a court may order that the defendant be incarcerated "during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release." 18 U.S.C. § 3563(b)(1); *see also United States v. Little*, 78 F.4th 453, 461 n.7 (D.C. Cir. 2023) (section 3563(b)(1) "contemplates *short* periods of confinement like 'nights' and

'weekends' interspersed throughout probation"). The statute was designed to give courts flexibility in the "fashioning of conditions of probation in order to make probation a useful alternative to a term of imprisonment." S. Rep. No. 98-225, at 59 (1983). Because the Kahlers have pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), a second-degree misdemeanor, the statutory maximum of total confinement the Court may impose under § 3563(b)(10) is six months.

Judges in this district have imposed intermittent confinement as a condition of probation in many January 6 cases. *See*, *e.g.*, *United States v. Cameron*, 22-cr-17 (TFH), ECF No. 36 (D.D.C. Aug. 17, 2022) (imposing 30 days of confinement in three-day intervals as condition of three years of probation); *United States v. Vuksanaj*, 21-cr-620 (BAH), ECF No. 43 (D.D.C. Apr. 29, 2022) (imposing 42 days of confinement in 14-day intervals as condition of three years of probation). While the statute refers to multiple intervals, a single short interval is also permissible. *See*, *e.g.*, *United States v. Valentin*, 21-cr-702 (JEB), ECF No. 65 (D.D.C. July 17, 2023) (imposing single 10-day interval of confinement as condition of 12 months of probation); *United States v. Escalera*, No. 22-cr-364 (APM), ECF No. 36 (D.D.C. Aug. 8, 2023) (imposing single seven-day interval as condition of two years of probation); *see also* S. Rep. No. 98-225, at 99 (noting that statute was intended to permit a single "brief period of confinement").

Here, a condition of intermittent confinement totaling 14 days is sufficient, but not greater than necessary, to serve the purposes of sentencing under 18 U.S.C. § 3553(a)(2).

## VI.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that the Kahlers must pay $500 in restitution, which reflects in part the role the Kahlers played in the riot on January 6.[7] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) The Kahlers' restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

**VII.    Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence both Ralph Kahler and Suzanne Kahler to thirty-six months of probation with a condition of intermittent confinement totaling 14 days, 60 hours of community service, and $500 in restitution. Such sentences protect the community, promote respect for the law, and deter future crime by imposing restrictions on the Kahlers' liberty as a consequence of their behavior and lack of remorse, while recognizing their acceptance of responsibility for their crimes by pleading guilty.

<div style="margin-left: 40%">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     s/ *Joseph Huynh*
         JOSEPH H. HUYNH
         D.C. Bar No. 495403
         Assistant United States Attorney (Detailed)
         405 East 8th Avenue, Suite 2400
         Eugene, Oregon 97401-270

</div>